[Civ. No. 7932. First Appellate District, Division One.—June 13, 1931.]

AUGUSTA CORUM, Petitioner, v. THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent.

George D. Collins, Jr., for Petitioner.

M. W. Dobrezensky and Chas. M. Douglas for Respondent.

KNIGHT, J.—The Mutual Building and Loan Association of Long Beach, a corporation, brought an action in the respondent court against petitioner and others to recover the sum of $31,264, and incidental thereto obtained a writ of attachment which it caused to be levied upon certain real and personal property including apartment-house

furnishings. Petitioner moved to dissolve the attachment, but prior to the hearing of the motion the plaintiff in the action amended its complaint by reducing the amount sought to be recovered to $26,905.17, and at the hearing filed an amended affidavit, obtained an amended writ of attachment and caused a second levy to be made upon said property; and about a month later an alias writ was obtained and levied upon additional real property.

Petitioner now seeks by this proceeding in *mandamus* to compel the respondent court to dissolve said attachment and quash the proceeding upon which it is founded upon the ground that the original affidavit of attachment is void for want of jurisdictional averments. In response to the alternative writ issued herein respondent filed a motion to strike out certain portions of the petition, also a demurrer and an answer; but in view of the conclusion we have reached upon the merits of the proceeding it is unnecessary to consider the points presented by the motion and the demurrer. Accordingly the motion is denied and the demurrer overruled.

Section 538 of the Code of Civil Procedure provides that a prerequisite to the issuance of a writ of attachment is the giving of an affidavit by or on behalf of plaintiff showing "the facts specified in section 537 which entitled him to the writ", and the latter section provides that the writ may issue: "1. In an action upon a contract, express or implied, for the direct payment of money, where the contract is made or is payable in this state, and is not secured by any mortgage or lien upon real or personal property, or any pledge of personal property, or, if originally so secured, such security has, without any act of the plaintiff, or the person to whom the security was given, become valueless . . . " Sections 556 and 557 of the same code provide for a motion to discharge the attachment, and section 558 declares that if upon the hearing of the motion "it satisfactorily appears that the writ of attachment was improperly or irregularly issued it must be discharged; provided that such attachment shall not be discharged if at or before the hearing of such application, the writ of attachment, or the affidavit, or undertaking upon which such attachment was based shall be amended and made to conform to the

provisions of this chapter". The foregoing proviso was added to section 558 by amendment in 1909.

The original affidavit in the present case, the legality of which petitioner challenges, contained an averment that the amount sued for was due "upon an express contract for the direct payment of money, to-wit: for a balance due on a promissory note and deed of trust made and executed by defendants to plaintiff's assignor and that such contract was made and is payable in this state, and that the payment of the same has not been secured by any mortgage or lien upon real or personal property or any pledge of personal property"; but it omitted to state further that the security mentioned, without any act of plaintiff, had become valueless. The omission was supplied, however, by the amended affidavit, which averred that the indebtedness sued upon was due "upon an express contract for the direct payment of money, to-wit: for the balance due on a promissory note said balance being the balance remaining after the sale of real estate, and the application of the proceeds thereof under a deed of trust of even date with said promissory note given to secure the same and that such contract was made and is payable in this state and that the payment of the unpaid balance of said promissory note has not been secured by any mortgage or lien upon real or personal property, or any pledge of personal property and that the security of said deed of trust hereinbefore specified has been fully exhausted".

Petitioner's contention that the original affidavit is void is based upon the omission to aver therein, as required by the provisions of said section 537, that the security represented by the trust deed had become or was valueless; and it is argued therefore that being void it was not subject to amendment. We are of the opinion, however, that the situation falls clearly within the rule stated and applied in the cases of *Hamburger* v. *Halperm*, 28 Cal. App. 317 [152 Pac. 61], *Nichols* v. *Davis*, 23 Cal. App. 67 [137 Pac. 41, 43], and declared also in *Peterson* v. *Beggs*, 26 Cal. App. 760 [148 Pac. 541]; and that consequently, under the proviso of said section 558, the omission was remediable by amendment.

The situations dealt with in the two cases cited by petitioner were essentially different from the one here presented

for the reason that the documents there considered were absolute nullities. That is to say, in *Fairbanks Morse & Co.* v. *Getchell,* 13 Cal. App. 458 [110 Pac. 331], a notary, commissioned as such for Kern County, while in that county, sought to take the affidavit of attachment by administering the oath to the affiant over the telephone while the latter was in Los Angeles County; and it was held that the transaction was a nullity for the reason that a notary commissioned for one county is not vested with authority to administer an oath in another county; and it was further held that the affidavit being void, there was nothing to amend, the court saying that the amendment authorized by said section 558 contemplates the existence of an affidavit, and that there could be no irregularity in that which had no existence. In other words, as said in *Nichols* v. *Davis, supra,* in commenting on the decision in the Fairbanks case, "In that case, there was in effect no affidavit at all, hence there was nothing to amend, and the statute gives authority only to amend what was in existence". Continuing, the court said: "That was as far as the case called for decision. We can conceive of an affidavit not absolutely void yet lacking in some substantive particular, but showing an honest attempt to follow the statute." And the case of *Alexander* v. *Superior Court,* 91 Cal. App. 312 [266 Pac. 993], involved the validity of an undertaking, which was held to be void because the plaintiff in the action sought to act both as principal and surety; and being void it was further held that the same was not subject to amendment. In the present case, however, the document in question admittedly was duly subscribed and sworn to before a notary and filed with the clerk of the court. Consequently it possessed all the elements necessary to constitute an affidavit which the code defines to be "a written declaration under oath, made without notice to the adverse party". (Code Civ. Proc., sec. 2003.) Therefore, despite petitioner's argument to the contrary, it will be seen that her objections to the affidavit pertain only to the defective form of the averments contained therein, and since some attempt was made to set forth the matters prescribed by said code section, but through inadvertence or oversight a portion thereof was omitted, we think that under the proviso embodied in said section 558 and the law as

declared in the cases above cited, the plaintiff therein was entitled to supply the omitted portion by amendment.

Petitioner contends also that the amended affidavit is legally insufficient in that it fails to state that said security became valueless and exhausted ''by valid sale in foreclosure under and pursuant to the terms and conditions of the power of sale in the trust deed and in conformity with the requirements of section 2924 of the Civil Code and section 692 of the Code of Civil Procedure''. However, the language employed in the amended affidavit substantially conforms to the wording of the statute, which is all that is required (*Nichols* v. *Davis, supra; Barbieri* v. *Ramelli,* 84 Cal. 174 [24 Pac. 113]; *O'Conor* v. *Witherby,* 112 Cal. 38 [44 Pac. 340]); and moreover, the point urged relates entirely to the question of the validity of the indebtedness sued upon which necessarily cannot be determined on a motion to discharge the attachment, but must be put in issue and tried out on the merits of the case itself. (*Republic Truck Sales Corp.* v. *Peak,* 194 Cal. 492 [229 Pac. 331].)

Nor is there any merit in the remaining point that the filing of the amended complaint and the amended affidavit necessitated the giving of a new undertaking. It is true, of course, that where a cause of action set forth in the complaint, or an attachment proceeding, is altered in such manner as will discharge the sureties, as by increasing their liability, a new undertaking must be given. (6 Cor. Jur. 504.) But in the present case the amendment to the complaint consisted merely of reducing the amount of the indebtedness sued upon, which obviously did not increase the liability of the sureties; and it is held generally that sureties are not discharged by the filing of an amended affidavit. (6 Cor. Jur. 347.) The case of *Michelin Tire Co.* v. *Bentel,* 184 Cal. 315 [193 Pac. 770], cited by petitioner, is not pertinent. It involved a bond on release of attachment, in an action to which there was a valid defense; and subsequent to the giving of the bond the complaint was amended by adding a new and second cause of action, which had the effect of depriving the defendant of the meritorious defense he had at the time the sureties executed the bond, and thereby increased the liability of the sureties.

The remaining points urged by the petition are merely incidental to those already discussed and determined.

The writ is denied.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 13, 1931, and an application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 10, 1931.